# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETUATE SEKONA, | No. 2:16-CV-0517-JAM-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| F. CUSTINO, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment (Doc. 84).  Defendants argue they are entitled to judgment as a matter of law because plaintiff failed to exhaust available administrative remedies prior to bringing this action.

## I.  PLAINTIFF'S ALLEGATINOS

This action proceeds on plaintiff's verified first amended complaint (Doc. 55). Plaintiff names the following officers at Mule Creek State Prison (MCSP) as defendants: (1) Custino; (2) Angle; (3) Charon; and (4) Snow.  Plaintiff alleges that defendant Custino was the floor officer on June 27, 2014.  According to plaintiff, Custino ordered plaintiff to move to cell 142, but plaintiff complained that cell 142 was unsafe.  Plaintiff alleges that he told Custino that cell 142 "is so dangerous for his life and safety."  While plaintiff adds that the "move was a setup

1

by the gang members," plaintiff does not further explain this allegation or if Custino was involved with the "setup." Plaintiff further alleges that the "porter" was responsible for having him moved to cell 142 "with my enemy 'skinhead,'" apparently in retaliation for plaintiff having reported some kind of drug deal a week earlier.

Plaintiff next states that Custino and another officer went to cell 142 to talk with the inmate currently housed in that cell – inmate Loveday. According to plaintiff, inmate Loveday warned Custino not to house plaintiff with him, that they would not get along, and that Loveday would harm plaintiff. Plaintiff claims that, despite this warning from inmate Loveday, Custino ordered plaintiff to move to cell 142. Plaintiff alleges that, later that day, he fell asleep in his new cell while inmate Loveday was outside on the yard. According to plaintiff, when inmate Loveday returned to their shared cell, Loveday attacked plaintiff. Plaintiff states that this attack resulted in severe injuries.

As to defendant Angle, while plaintiff references the cell move and assault of June 27, 2014, plaintiff does not explain how defendant Angle was involved other than to claim that defendant Angle "took lightly his duty."

Plaintiff alleges that defendant Snow was an investigative officer assigned following the assault. According to plaintiff, defendant Snow refused to allow plaintiff to call any witnesses at a disciplinary hearing.

Finally, plaintiff alleges that defendant Charon was the senior hearing officer at a disciplinary hearing held on July 20, 2014, at which plaintiff was found guilty of fighting. Plaintiff claims that defendant Charon is liable for the alleged conduct of defendant Snow. Plaintiff also appears to claim that defendant Charon denied him a staff assistant at his hearing.

On July 13, 2018, the court determined service of the first amended complaint was appropriate as to defendants Custino and Snow. See Doc. 63 (July 13, 2018, service order). On July 20, 2018, the court issued findings and recommendations that defendants Charon and Angle be dismissed for failure to state a claim. See Doc. 67 (July 20, 2018, findings and recommendations). On August 6, 2018, plaintiff responded to the court's findings and recommendations with a request for voluntary dismissal of defendants Charon and Angle, see

2

Doc. 71, which the District Judge approved on September 27, 2018, see Doc. 73 (September 23, 2018, District Judge order).

## II.  THE PARTIES' EVIDENCE

### A.  **Defendants' Evidence**

As outlined in their separate statement of undisputed facts, defendants contend the following facts are not in dispute:

> 1.  Between June 27, 2014 and March 10, 2016, Plaintiff, submitted three inmate appeals that were accepted and decided at the third and final level of review. None of these inmate appeals exhausted allegations concerning Plaintiff's claims that on June 27, 2014, at Mule Creek State Prison, Defendant Custino created a risk to Plaintiff's safety, or that on July 10, 2014, Defendant Snow violated Plaintiff's due process rights.
>
> 2.  Between June 27, 2014, and March 10, 2106, Plaintiff submitted an inmate appeal that was accepted for review, log no. MCSP-15-02947 (TLR [Third-Level Response] No. 1507727), however it failed to exhaust his allegations against Defendants.
>
> 3.  Plaintiff's inmate appeal, log no. MCSP-15-02947 (TLR No. 1507727), concerning allegations that on June 27, 2014, Defendant Custino created a risk to Plaintiff's safety, and that on July 10, 2014, Defendant Snow violated Plaintiff's due process rights, was canceled due to Plaintiff's failure to meet time constraints.

See Doc. 84-3.

The foregoing is supported by the declarations of M. Johnston, the Acting Appeals Coordinator at MCSP, see Doc. 84-6, and M. Voong, the Chief of the Office of Appeals for the California Department of Corrections and Rehabilitation, and exhibits attached thereto.

### B.  **Plaintiff's Evidence**

In his oppositions to defendants' motion, plaintiff submits and discusses evidence relating to his underlying claims, as well as his efforts to have inmate Loveday prosecuted for the cell assault. Regarding his inmate appeal at log no. MCSP-15-02947, plaintiff provides the court with one relevant document – a copy of the first page of the second level response dated December 2, 2015. See Doc. 90, pg. 29. The document indicates plaintiff's grievance was processed as a staff complaint as well as an "Appeal Inquiry." Id.  As to defendants Custino and

Snow, the second level response states:

> APPEAL ISSUE: In your Complaint, you assert your have been the victim of misconduct by custody staff and subsequent negligence (failure to act) resulting in your being assaulted inside your cell. You claim you have suffered a concussion and permanent brain damage as a result of the assault. Specifically, your complaint states you were ordered by Officer F. Custino to complete a cell move. . . and house with Inmate Loveday. . . . The cell move was signed by Officer F. Angel. You allege that the officers failed to protect you from the "drug guys," and that you told them prior to going into the cell that you wouldn't be safe in the cell, and they would try to kill you or send you to the hospital. Your complaint claims that you were subsequently assaulted by Loveday while you were asleep in the cell, and you suffered permanent "head brain concussion and lost your teeth" as a result of the attack. You identify Officer L. Snow as the person who was your Investigative Employee, and you claim that Officer Snow also conducted the Rules Violation Report (RVR) hearing in violation of Title 15 section 3315.

Id.

The second level response states further as follows:

> All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. . . .

Id.

### III. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See

/ / /

/ / /

/ / /

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in first instance. See Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted. See id.

///

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group. See Cal. Code Regs. tit 15, § 3084.2(h).

///

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

According to defendants:

> Plaintiff did not exhaust the administrative process against either Defendant. The allegations giving rise to Plaintiff's claims against Defendants occurred on June 27 and July 10, 2014. Plaintiff filed this action on March 10, 2016. (Complaint, ECF No. 1.) To have exhausted the administrative process before bringing this action, Plaintiff would have had to submit an administrative appeal concerning his claims against Defendants after June 27, 2014, and pursue that appeal through the third level of review before March 10, 2016. Plaintiff did not do so.
> Plaintiff submitted three inmate appeals in which he obtained a Third Level Decision during the relevant time frame, but none exhausted his claims against Defendants. (DUF No. 5.) Inmate appeal log no. TLR 1604472 grieved a Rules Violation Report Plaintiff received on March 29, 2016 related to his altercation with another inmate in an MCSP classroom. (*See* Voong Decl., ¶ 8(c).) Inmate appeal log no. TLR 1604991 grieved Plaintiff's claim that correctional staff lost his property during his transfer to Administrative Segregation on March 29, 2016. (*See* Voong Decl., ¶ 8(d).) Inmate appeal log no. TLR 1507727 concerned Plaintiff's allegations in this case, however it was canceled due to time constraints at the third level of review. (DUF Nos. 6-7.)
> Plaintiff submitted fifteen inmate appeals between June 27, 2014, and March 10, 2016. Of these appeals, five were denied at the first or second level of review. None of these appeals concern the allegations Plaintiff makes in this lawsuit, except for appeal log no. MCSP-15-02947 (TLR No. 1507727) which was canceled at the third level of review. (*See* Johnston Decl. ¶¶ 9-10.) The remaining ten appeals were screened-out or canceled at the first or second level of review. (*See* Johnston Decl. ¶ 10(f)-(o).)
> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Moreover, under CDCR regulations, a cancellation or rejection decision does not exhaust administrative remedies. *See* Cal. Code Regs.

8

tit. 15, § 3084.1(b). Accordingly, Plaintiff's failure to timely submit appeal log no. MCSP-15-02947 (TLR No. 1507727) to the Third Level of Review before filing suit subjects this case to dismissal.

While the court agrees with defendants the undisputed evidence establishes plaintiff failed to pursue his grievance through to the third and final level of administrative review, the court does not agree that such failure mandates dismissal of the case. Notably, as outlined above, the grievance was characterized as a staff complaint. As such, it was impossible for plaintiff to pursue his grievance further and the claims were exhausted. See Brown, 422 F.3d at 940. While the grievance was also characterized as an "Appeal Inquiry" and plaintiff was advised of the need to further appeal "any unrelated issue," plaintiff raised no issues separate from his complaints of staff misconduct, and the response to plaintiff's grievance identified no such unrelated issue. Defendants do not address the staff complaint component of the case, which the court finds to be dispositive of defendants' motion for summary judgment without a preliminary proceeding under Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), to resolve a factual dispute.

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion for summary judgment (Doc. 84) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 22, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

9