IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETUATE SEKONA,<br><br>    Plaintiff,<br><br>    v.<br><br>F. CUSTINO, et al.,<br><br>    Defendants. | No. 2:16-CV-0517-JAM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are the parties' cross-motions for summary judgment (ECF Nos. 118 and 127).

### I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's verified first amended complaint. See ECF No. 55. Plaintiff names the following officers at Mule Creek State Prison as defendants: (1) Custino; (2) Angle; (3) Charon; and (4) Snow. Plaintiff alleges that defendant Custino was the floor officer on June 27, 2014. According to plaintiff, Custino ordered plaintiff to move to cell 142, but plaintiff complained that cell 142 was unsafe. Plaintiff alleges that he told Custino that cell 142 "is so dangerous for his life and safety." While plaintiff adds that the "move was a setup by the gang members," plaintiff does not further explain this allegation or if Custino was involved with

1

the "setup." Plaintiff further alleges that the "porter" was responsible for having him moved to cell 142 "with my enemy 'skinhead,'" apparently in retaliation for plaintiff having reported some kind of drug deal a week earlier.

Plaintiff next states that Custino and another officer went to cell 142 to talk with the inmate currently housed in that cell – inmate Loveday. According to plaintiff, inmate Loveday warned Custino not to house plaintiff with him, that they would not get along, and that Loveday would harm plaintiff. Plaintiff claims that, despite this warning from inmate Loveday, Custino ordered plaintiff to move to cell 142. Plaintiff alleges that, later that day, he fell asleep in his new cell while inmate Loveday was outside on the yard. According to plaintiff, when inmate Loveday returned to their shared cell, Loveday attacked plaintiff. Plaintiff states that this attack resulted in severe injuries.

As to Angle, while plaintiff references the cell move and assault of June 27, 2014, plaintiff does not explain how Angle was involved other than to claim that Angle "took lightly his duty."

Plaintiff alleges that Snow was an investigative officer assigned following the assault. According to plaintiff, Snow refused to allow plaintiff to call any witnesses at a disciplinary hearing.

Finally, plaintiff alleges that Charon was the senior hearing officer at a disciplinary hearing held on July 20, 2014, at which plaintiff was found guilty of fighting. Plaintiff claims that Charon is liable for the alleged conduct of defendant Snow. Plaintiff also appears to claim that Charon denied him a staff assistant at his hearing.

The court determined service was appropriate for defendants Custino and Snow. See ECF No. 64. After the court recommended dismissal of defendants Charon and Angle for failure to state a claim, see ECF No. 67, plaintiff sought voluntary dismissal of these defendants, see ECF No. 71. The District Judge adopted the findings and recommendations and defendants Charon and Angle were dismissed on plaintiff's notice of voluntary dismissal. See ECF No. 73.

/ / /

/ / /

## II. THE PARTIES' EVIDENCE

**A.** **Defendants' Evidence**

Defendants have filed a separate statement of undisputed facts in support of their motion for summary judgment. See ECF No. 118-2. According to defendants, the following facts are not in dispute:

General Facts

1. At all relevant times, plaintiff was an inmate at Mule Creek State Prison (MCSP) (Custino Declaration; Snow Declaration).

2. At all relevant times, defendant Custino was a correctional officer at MCSP (Custino Declaration).

3. At all relevant times, defendant Snow was a correctional officer at MCSP (Snow Declaration).

Facts Relating to the Cell Move

1. On June 27, 2014, inmate Perish requested plaintiff move to cell 142 (Plaintiff's Deposition).

2. Until that time, cell 142 housed inmate Loveday, and moving plaintiff to cell 142 required plaintiff to become cellmates with inmate Loveday (Plaintiff's Deposition).

3. On June 27, 2014, plaintiff informed defendant Custino for the first time that he had safety concerns with being housed with inmate Loveday (Plaintiff's Deposition).

4. In response to plaintiff's communication of safety concerns, defendant Custino conferred with inmate Loveday (Plaintiff's Deposition).

5. After conferring with inmate Loveday, defendant Custino did not have any information that would indicate housing plaintiff with inmate Loveday would create a safety risk (Plaintiff's Deposition).

6. Custino did not prevent the cell move (Plaintiff's Deposition).

7. Plaintiff moved to cell 142 on June 27, 2014 (Plaintiff's Deposition).

8. After the cell move, plaintiff was assaulted by inmate Loveday and the two fought (Plaintiff's Deposition).

9. No one witnessed the fight (Plaintiff's Deposition).

9. Defendant Custino's work shift had ended by the time the fight between plaintiff and inmate Loveday occurred (Custino Declaration; Plaintiff's Deposition).

3

Facts Relating to the Disciplinary Hearing

1. Following the altercation with inmate Loveday, plaintiff was issued a rules violation report for fighting (Plaintiff's Deposition).

2. In connection with the rules violation report, defendant Snow was assigned as plaintiff's staff assistant (Snow Declaration).

3. Defendant Snow's role was to advise plaintiff, not decide any of his positions during the rules violation hearing (Snow Declaration).

4. Plaintiff's disciplinary hearing was held on July 20, 2014 (Snow Declaration).

5. Defendant Snow did not deny plaintiff any witnesses at the hearing (Snow Declaration).

ECF No. 118-2.

Defendants lodged the transcript of plaintiff's March 4, 2019, deposition. See ECF No. 119 (Notice). With their motion, defendants have also submitted the following documents:

| | | |
|---|---|---|
| Exhibit A | | Declaration of defendant Custino. |
| Exhibit B | | Declaration of defendant Snow. |
| Exhibit C | | Excerpts from plaintiff's March 4, 2019, deposition. |
| Exhibit D | | Declaration of Litigation Coordinator B. Hancock. |
| Exhibit E | | Rules Violation Report log no. C06-14-045. |
| Exhibit F | | Documents produced by plaintiff at his deposition. |

See ECF No. 118-4.

**B.  Plaintiff's Evidence**

Incorporated into plaintiff's opposition to defendants' motion for summary judgment are plaintiff's two one-page declarations, dated May 30, 2019. See ECF No. 126, pgs. 16-17. In the first declaration, plaintiff states he was assaulted by inmate Loveday on June 27, 2014. See id. at 16. He also states defendant Snow was an "investigative (sic) in this case." Id. According to plaintiff, he witnesses defendant Snow falsify an entry indicating plaintiff did not

/ / /

/ / /

want any witnesses at his disciplinary hearing.  See ECF No. 126, pg. 16.  According to plaintiff:

> On 7-10-14, I saw when I signed for my report with him [Snow]: After my signed he forced fraudulent on top my signature stated:  I didn't want my witnesses to present on my hearing: I never consent for that.  I found out later what he wrote!
>
> He denied it's not him: but I saw with my 2 eyes he did it. . . .
>
> Id.

In his second declaration, plaintiff states he reported his safety concerns regarding inmate Loveday to defendant Custino after being told to move cells on June 27, 2014.  See id. at 17.

In support of his motion for summary judgment, plaintiff has submitted over 140 pages of various documents, largely consisting of discovery in this action, defendants' evidence discussed above, portions of his prison records, and his own declarations.  See ECF No. 127.

The court has considered all of plaintiff's evidence, as well as his verified first amended complaint.

### III.  STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could

properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

Plaintiff claims defendant Custino failed to protect him, in violation of his Eighth Amendment rights. Plaintiff also claims defendant Snow denied him due process at a prison disciplinary hearing, in violation of his Fourteenth Amendment rights. In their motion for summary judgment, defendants Custino and Snow argue they are entitled to judgement in their favor as a matter of law because: (1) the undisputed evidence establishes defendant Custino was not deliberately indifferent to a risk to plaintiff's safety; (2) the undisputed evidence establishes defendant Snow had no involvement in plaintiff's prison disciplinary hearing and lacked the authority to deny witnesses; and (3) defendants are entitled to qualified immunity. In his motion for summary judgment, plaintiff argues the undisputed evidence shows he is entitled to judgment against defendants as a matter of law.

    **A.**    **Defendants' Motion for Summary Judgment**

          1.    Safety Claim – Defendant Custino

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Defendants argue plaintiff cannot prevail on his safety claim against defendant Custino. According to defendants:

> To prevail on his claim that Defendant Custino failed to protect him in violation of the Eighth Amendment, Sekona must prove the following: (1) Custino was deliberately indifferent; (2) to an excessive risk to Sekona's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To establish deliberate indifference, Sekona must prove that Custino knew of and disregarded an excessive risk to Sekona's safety. Thus, Custino must have been aware of facts from which the inference could have been drawn that a substantial risk of serious harm existed, and Custino must also have drawn that inference. *Id*. Custino cannot be held liable, however, if he proves that he was unaware of even an obvious risk or if he responded reasonably to a known risk, even if the harm ultimately was not averted. *Id.* at 839-42, 847; *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).
> Sekona admits that Custino, upon becoming aware of Sekona's safety concerns, responded to such concerns by conferring with the source of the alleged threat. (Fact 7.) Sekona admits that Custino did so to investigate such concerns for the purpose of informing Sekona on how to proceed. (*Id.*).

8

> In light of the standards promulgated under *Farmer*, the act of visiting and conferring with the inmate for approximately ten to fifteen minutes, admittedly to dispel Sekona's concerns, was reasonable under the circumstances. Relevant to the reasonableness inquiry is that, before their fight, Loveday and Sekona were not deemed enemies. (Fact 9.) The undisputed facts show that, notwithstanding Sekona's statements on June 27, 2014, there was no basis to infer any risk of harm in housing Sekona with inmate Loveday. (*Id.*) Also relevant is the nature of the warning itself, and how it informed the sufficiency of Custino's response. Sekona's mere self-reporting of non-compatibility with Loveday, in the absence of other articulable facts indicating risk of harm specific to Loveday, did not warrant a response by Custino beyond conferring with Loveday for approximately ten to fifteen minutes. *See Thompson v. Lee*, No. 1:07 CV 01299 LJO, 2015 WL 769683, at *8 (E.D. Cal. Feb. 23, 2015) (noting plaintiff's "evidence establishes, at most, some generalized fear of harm," which "fails to satisfy the Eighth Amendment's standard that prison official must be aware of a specific risk to an inmate") (footnote omitted). Correctional officers in Custino's position are not obliged to do more than what Custino did here simply on the basis of an inmate's self-report that he and a prospective cellmate will not get along.
>
> Because Custino was not deliberately indifferent toward Sekona's safety concerns, summary judgment should be entered in Defendant Custino's favor.

The gravamen of defendants' argument is that defendant Custino responded appropriately to plaintiff's concerns regarding a safety risk posed by sharing a cell with inmate Loveday. Defendants approach this central point from two directions. First, defendants contend defendant Custino reasonably responded to plaintiff's concerns regarding inmate Loveday. Second, defendants argue plaintiff failed to convey a sufficiently specific safety risk regarding inmate Loveday to trigger a greater response. Common to both these approaches is the assumption plaintiff did in fact report some sort of safety concern to defendant Custino. Neither of defendants' arguments makes any logical sense absent this fact. While defendants ask the court to assume plaintiff communicated a safety concern regarding inmate Loveday to defendant Custino, defendants' own evidence strongly suggests otherwise.

The facts concerning the cell move which defendants assert are undisputed derive exclusively from portions of plaintiff's deposition. According to defendants, plaintiff's deposition testimony establishes: (1) on June 27, 2014, plaintiff informed defendant Custino for the first time about his fears of inmate Loveday; and (2) in response, defendant Custino interviewed inmate Loveday and concluded there was no basis for plaintiff's fears. Based on this evidence, defendants conclude defendant Custino acted reasonably.

9

Defendants, however, undermine this evidence in footnote 1 of their separate statement. In footnote 1, defendants state:

> These facts are undisputed solely for purposes of this motion. At trial, Defendants will introduce evidence that Defendant Custino was never aware of any safety concerns between Plaintiff and inmate Loveday.

Though defendants do not describe this mystery evidence, they do say unequivocally that it will show that defendant Custino never had any knowledge whatsoever of plaintiff's concerns regarding inmate Loveday. Such evidence clearly puts into dispute the central factual premise of defendants' argument – that defendant Custino knew of a safety concern.

Setting this aside and accepting the presumption that defendant Custino did in fact know of plaintiff's safety concerns, despite the mystery evidence to the contrary, it is impossible to determine as a matter of law on excerpts of plaintiff's deposition whether defendant Custino's response was reasonable. Notably, though defendants assert defendant Custino interviewed inmate Loveday and concluded plaintiff's safety concerns were not warranted, defendants do not provide any evidence of the nature of the conversation with inmate Loveday. Whether plaintiff's concerns were unwarranted based on defendant Custino's conversation with inmate Loveday would depend on what inmate Loveday said. For example, if inmate Loveday told defendant Custino that he hated plaintiff and wanted nothing more than an opportunity to attack him, defendant Custino's mere interview of inmate Loveday may not have been reasonable.

Given this record, including indication of evidence that exists but has not yet been adduced, the court cannot say that defendants have met their burden of showing the non-existence of a genuine dispute of material fact to defeat plaintiff's Eighth Amendment safety claim as a matter of law.[1]

/ / /

/ / /

---

[1] The court observes that undisputed evidence showing defendant Custino was never aware of plaintiff's safety concerns regarding inmate Loveday would be dispositive of plaintiff's Eighth Amendment claim. The court is more than puzzled why defendants would not introduce such evidence here on a motion for summary judgment where significant public resources could be saved by considering all the available evidence. Defendants' apparent reservation of a "silver bullet" for time of a jury trial in federal court defeats the purpose of summary judgment, which is to determine if a trial is even necessary.

2. Due Process Claim – Defendant Snow

With respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff v. McDonnell, 418 U.S. 539, 563-70 (1974). Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56.

Defendants first argue plaintiff cannot establish a due process claim against defendant Snow because defendant Snow was not involved with the disciplinary hearing itself and had no authority to deny witnesses. Defendants also contend that, even if Defendant Snow did deny plaintiff witnesses, no due process violation occurred because there were no witnesses to the fight between plaintiff and inmate Loveday. For the reasons discussed below, the court finds the undisputed evidence supports defendants' contentions.

i. Snow's Involvement and Authority

Defendants argue:

> Sekona claims that Snow violated his right to due process by denying him the opportunity to call witnesses at his rules violation hearing. The undisputed facts establish, however, that Snow lacked the authority to make any decisions concerning the rules violation hearing. (Fact 28.) Snow's role was limited to assisting Sekona prepare for and understand the disciplinary proceedings. (Facts 20-21.) Even if Snow wanted to prevent Sekona from calling his preferred witnesses, Snow lacked the ability to do so. (Facts 28.).
> Therefore, the undisputed facts establish that Snow did not proximately cause the absence of any preferred witnesses at the rules violation hearing, and otherwise, did not affect the disciplinary proceedings. All the due process requirements under *Wolff* were satisfied. (Facts 24, 32, 33.).

11

1  Defendants have presented evidence which, if undisputed, would show that defendant Snow was not in a position to deny plaintiff witnesses at his disciplinary hearing. In particular, defendant Snow states in his declaration that he had no authority to deny witnesses and did not in fact deny witnesses. Plaintiff, however, disputes these facts by stating in his declaration filed in opposition defendants' motion that he personally witnessed defendant Snow falsify a notation in the file indicating plaintiff declined any witnesses. If true, and if no witnesses were called on plaintiff's behalf for this reason, it may well be said that defendant Snow "denied" plaintiff witnesses by way of falsifying the record.

### ii. Relevance of Witnesses

According to defendants:

> Under *Wolff*, a plaintiff has a right to present evidence in his defense at a rules violation hearing. *Wolff*, 418 U.S. at 566. However, this right does not extend to irrelevant evidence. *Id*.
> Sekona received a Rules Violation Report for violating Title 15 of the California Code of Regulations, § 3005(d)(1). (Fact 18.) Under § 3005(d)(1), inmates "shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person."
> Notwithstanding the undisputed fact that Snow lacked the authority to deny Sekona's requested witnesses at the rules violation hearing, the absence of such witnesses did not affect the proceeding. Sekona admits that no one witnessed the June 27, 2014 fight. (Fact 17.) It is implausible that witnesses who did not even witness the fight could have rebutted the overwhelming evidence establishing that Sekona violated § 3005(d)(1). Because the testimonies of Sekona's witnesses would not have been probative to the issue being adjudicated at the rules violation hearing (whether Sekona used force against or assaulted Loveday), their testimonies would not have mitigated the overwhelming evidence showing that Sekona engaged in a fight. Therefore, any testimony from Sekona's requested witnesses would have been immaterial.

The court finds this issue dispositive of plaintiff's due process claim against defendant Snow. Regardless of whether defendant Snow denied plaintiff witnesses, plaintiff had no due process right to call witnesses who could not offer relevant testimony. Such is the case here because plaintiff stated at his deposition that no one witnessed his fight with inmate Loveday. Given that the only issue relevant at the disciplinary hearing was whether plaintiff was involved in a fight with inmate Loveday, it is undisputed that there could have been no witnesses who could have offered relevant testimony. Defendant Snow is, therefore, entitled to judgment as

12

a matter of law in his favor on plaintiff's due process claim.

### 3. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to

13

1 | qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct
2 | did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see
3 | also Saucier, 533 U.S. at 205.

4 | The first factors in the qualified immunity analysis involve purely legal questions.
5 | See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal
6 | determination based on a prior factual finding as to the reasonableness of the government
7 | official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court
8 | has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan,
9 | 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light
10 | most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez
11 | v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

12 | The court begins the analysis with the final factor – whether a reasonable officer in
13 | defendant Custino's situation would have thought his or her conduct was reasonable. As stated
14 | above, this inquiry involves a legal determination based on a prior factual determination as to the
15 | reasonableness of the conduct. Assuming defendant Custino knew of plaintiff's safety concerns,
16 | the conduct at issue in this case is whether defendant Custino acted reasonably in merely
17 | interviewing inmate Loveday and taking no further action. As to such conduct, and for the
18 | reasons discussed above, there can be no factual determination at this stage.

**B.     Plaintiff's Motion for Summary Judgment**

As discussed above, the court concludes defendant Snow is entitled to judgment as a matter of law on plaintiff's due process claim. Therefore, plaintiff is not entitled to judgment in his favor as a matter of law against defendant Snow on this claim.

As to plaintiff's Eighth Amendment safety claim against defendant Custino, the court finds summary judgment in defendant Custino's favor is not appropriate because questions of fact remain. Specifically, it remains unclear whether defendant Custino knew of plaintiff's safety concerns. While defendants ask the court to presume he did, defendants state evidence exists which shows that he did not. Further, even assuming defendant Custino did know of plaintiff's safety concerns regarding inmate Loveday, issues regarding the nature of the safety

concerns expressed by plaintiff and the reasonableness of defendant Custino's response in light of statements provided by inmate Loveday remain unresolved. Plaintiff's evidence of record does not resolve these factual issues in his favor. Therefore, plaintiff is also not entitled to judgment in his favor at this time on his Eighth Amendment claim against defendant Custino. Because the court cannot determine whether defendant Custino acted reasonably, assuming again he knew of a safety risk, he is not entitled to qualified immunity at this time.

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (ECF No. 118) be denied as to plaintiff's Eighth Amendment safety claim against defendant Custino;

2. Defendants' motion for summary judgment (ECF No. 118) be granted as to plaintiff's Fourteenth Amendment due process claim against defendant Snow;

3. Plaintiff's motion for summary judgment (ECF No. 127) be denied in its entirety;

4. Judgement be granted in favor of defendant Snow as a matter of law; and

5. This matter proceed on plaintiff's Eighth Amendment safety claim against defendant Custino only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 4, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE